UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: August 9, 2018

MURRAY ENGINEERING P.C.,

                Plaintiff,

          v.

CHARLES CHRISTOPHER REMKE,
JOSEPH CRAIG BLOCKNO, MARK LINE
INDUSTRIES LLC, and MOSAIC CAPITAL
GROUP LLC,

                Defendants.

17 Civ. 6267 (KPF)

OPINION AND ORDER

------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

This civil action, as many before and since, stems from a failed business relationship, this one between Plaintiff Murray Engineering P.C. ("Murray") and Defendants Mosaic Capital Group LLC, Mark Line Industries LLC ("Mark Line"), Joseph Blockno, and Charles Remke (together with Blockno, the "Individual Defendants," and together with Blockno and Mark Line, the "Moving Defendants").[1]  Plaintiff alleges that Defendants Remke and Blockno persuaded Plaintiff to provide engineering services in connection with four construction projects in New York and New Jersey for which Defendant Mark Line served as general contractor.  Plaintiff further alleges that Defendants failed to pay Plaintiff for any of the work performed.

---

[1]  Defendant Mosaic Capital Group LLC was served with the complaint, but has neither answered nor filed a motion.

From this broken relationship, Plaintiff discerns fifteen causes of action: breach of contract; alter ego liability; goods sold and delivered; account stated; unjust enrichment; promissory estoppel; breach of fiduciary duty; breach of constructive trust; conversion; fraudulent inducement; violation of the "Prompt Payment Law" under Article 35-E of New York's General Business Law ("GBL"), N.Y. GBL §§ 756-758; and violations of Sections 273, 274, 275, and 276 of New York's Debtor and Creditor Law ("DCL"), N.Y. Debt. & Cred. Law §§ 1-291. In total, Plaintiff seeks $239,654 in damages, of which $120,000 constitutes punitive damages.

Moving Defendants seek dismissal of all claims. They advance the following arguments: *First*, that the Court lacks personal jurisdiction over Defendants Blockno and Remke; *second*, that Plaintiff's factual allegations are insufficient to state a claim for breach of contract or alter ego liability; *third*, that the claims for account stated, unjust enrichment, breach of fiduciary duty, breach of constructive trust, conversion, and promissory estoppel are duplicative of Plaintiff's breach of contract claim; *fourth*, that the fraudulent inducement, unjust enrichment, and DCL § 276 claims do not meet the heightened pleading standard of Rule 9(b); *fifth*, that Plaintiff's fraudulent conveyance claims under DCL §§ 273, 274, and 275 are inadequately pleaded; and *sixth*, that Plaintiff's GBL 35-E claim fails because the alleged agreements between Plaintiff and Defendant Mark Line do not qualify as "construction contracts" under the statute.

While Moving Defendants overstate the inadequacies in Plaintiff's pleadings, they are correct that certain causes of action fail to state a claim, generally because they are duplicative of other claims or lack the specificity required by the Federal Rules of Civil Procedure. For the reasons set forth below, the Court grants in part and denies in part the pending motion to dismiss.

## BACKGROUND

### A.  Factual Background[2]

In 2016 and 2017, Defendant Mark Line entered into construction contracts with owners of four properties in New York City and in Asbury Park and Newark, New Jersey. (FAC ¶ 10). In connection with those projects, Mark Line also entered into subcontracts with Plaintiff Murray Engineering (the "Subcontracts"), according to which Plaintiff was to provide "certain [engineering] services, equipment[,] and materials[.]" (*Id.* at ¶ 11). Periodically, Murray and Mark Line also entered into supplemental agreements that adjusted the scope of work under the Subcontracts. (*Id.* at ¶ 12).

Plaintiff alleges that it began to perform under the Subcontracts as early as June 29, 2016. (FAC ¶ 13). It states that, "[a]t all times ... Plaintiff was in full compliance with and had not breached the terms of the [Subcontracts and

---

[2]    The facts in this section are drawn from the First Amended Complaint ("FAC" (Dkt. #20)), filed on January 5, 2018. In adjudicating the pending motion to dismiss, the Court accepts as true the well-pleaded allegations in the FAC. *See In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (per curiam). For ease of reference, the Court refers to Moving Defendants' opening brief as "Def. Br." (Dkt. #23); to Plaintiff's opposition brief as "Pl. Opp." (Dkt. #24); and to Moving Defendants' reply brief as "Def. Reply" (Dkt. #28).

supplemental agreements] and duly performed all of its duties [there]under[.]"
(*Id.* at ¶ 14).  Plaintiff further asserts that, though Mark Line received payments
from the property owners, it failed to pay its subcontractors, including Murray.
(*Id.* at ¶¶ 15-16).  Plaintiff sent Mark Line invoices, account statements, and
other payment demands relating to work that Plaintiff had performed under the
Subcontracts, but Mark Line did not pay.  (*Id.* at ¶¶ 18-19).

Plaintiff alleges that Defendants Remke and Blockno were instrumental
in convincing the four property owners to hire Mark Line, as well as in
persuading Plaintiff and other subcontractors to perform work on the projects.
Remke and Blockno were "the sole shareholders and[ ] were[ ] in exclusive
control of Mark[ L]ine and over all of Mar[k L]ine's significant business
decisions."  (FAC ¶ 20).  They also maintained "exclusive control" over Mark
Line's "profits[,] … books and records[, and] … checking accounts," and failed
to capitalize the company properly.  (*Id.* at ¶ 21).  They "caused Plaintiff and
the [property owners] to rely on statements relating [to] Mar[k L]ine's financial
strength and security, which Remke and Blockno knew to be untrue when …
made[.]"  (*Id.* at ¶ 22).

Plaintiff further alleges that the Individual Defendants made "false
statements" with "specific intent to cause Plaintiff and the [property owners] to
detrimentally rely thereon, as part of [the Individual Defendants'] scheme for
Mar[k L]ine to collect the Project Trust Funds, which funds [the Individual
Defendants] could then convert for their own use, rather than paying Plaintiff."
(FAC ¶ 22).  Plaintiff "detrimentally relied upon [the Individual Defendants']

false statements[.]" (*Id.* at ¶ 23). And after the property owners paid the Defendants for work performed by subcontractors, including Plaintiff, the Individual Defendants caused Mark Line "to close and shut its doors and to cease conducting any business operations," and, further, "caused the Project Trust Funds to be misappropriated and wrongfully [used] … in violation of [Moving Defendants'] statutory and fiduciary duties." (*Id.* at ¶ 24). As a result, Mark Line has been "stripped … of all of its assets" and "become judgment-proof[.]" (*Id.* at ¶ 26). The Individual Defendants "fraudulently conveyed the assets of Mar[k L]ine in an attempt to escape … Mar[k L]ine's obligations to its creditors, including the Plaintiff." (*Id.* at ¶ 27).

## B.    Procedural Background

Plaintiff filed this action on August 18, 2017, seeking, *inter alia*, compensation for goods and services rendered in the amount of $119,654. (*See* Dkt. #1). The parties appeared for a pre-motion conference with the Court on November 30, 2017. (*See* Dkt. #19). Later that day, the Court issued a scheduling order, requiring Plaintiff to file an amended complaint, if any, by January 5, 2018. (*Id.*). Plaintiff timely filed its amended complaint. (Dkt. #20). Moving Defendants thereafter filed their motion to dismiss — pursuant to the Court's scheduling order — on February 20, 2018. (Dkt. #21, 23). On March 23-24, 2018, Plaintiff filed its opposition brief and supporting papers, including the Declaration of Eric P. Schutzer, attached to which was an exhibit containing some, if not all, of the Subcontracts at issue in this litigation. (Dkt.

#24, 25).  Moving Defendants filed their reply brief on April 6, 2018.  (Dkt. #28).

## DISCUSSION

**A.    Applicable Law**

**1.    Motions to Dismiss for Lack of Personal Jurisdiction**

When a defendant brings a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant."  *DiStefano* v. *Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001) (citation omitted); *accord In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013).  "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations."  *Dorchester Fin. Sec., Inc.* v. *Banco BRJ, S.A.*, 722 F.3d 81, 84-85 (2d Cir. 2013) (per curiam) (citation omitted).  All jurisdictional allegations "are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor[.]"  *A.I. Trade Fin., Inc.* v. *Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993).  However, the court "will not draw argumentative inferences in the plaintiff's favor" and need not "accept as true a legal conclusion couched as a factual allegation[.]"  *In re Terrorist Attacks*, 714 F.3d at 673 (citations omitted); *see also Licci ex rel. Licci* v. *Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).

District courts deciding a motion to dismiss for lack of personal jurisdiction must engage in a two-part analysis. *First*, the court must assess whether there is "a statutory basis for exercising personal jurisdiction." *Marvel Characters, Inc.* v. *Kirby*, 726 F.3d 119, 128 (2d Cir. 2013). In making this determination, the court "applies the forum state's personal jurisdiction rules" unless a federal statute "specifically provide[s] for national service of process." *PDK Labs, Inc.* v. *Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997) (internal quotation marks and citations omitted). *Second*, if there is a statutory basis for personal jurisdiction, the court must decide whether the exercise of jurisdiction comports with due process. *Sonera Holding B.V.* v. *Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (per curiam).

### 2. Motions to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

When a court considers a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), it must "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)). A plaintiff will survive a motion to dismiss if she alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does

require enough facts to nudge [a plaintiff's] claims across the line from conceivable to plausible." (internal quotation marks and citation omitted)).

The Court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008) (citation omitted); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks, brackets, and citation omitted)).

### 3. Pleading Fraud Claims Under Federal Rule of Civil Procedure 9(b)

State-law fraud claims, which Plaintiff advances here, must be pleaded with particularity pursuant to Rule 9(b). *Premium Mortg. Corp.* v. *Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009). Specifically, "the [claim] must: [i] specify the statements that the plaintiff contends were fraudulent, [ii] identify the speaker, [iii] state where and when the statements were made, and [iv] explain why the statements were fraudulent." *Lerner* v. *Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (internal quotation marks and citation omitted). Additionally, to satisfy Rule 9(b), a claim must "allege facts that give rise to a strong inference of fraudulent intent." *Berman* v. *Morgan Keegan & Co.*, 455 F. App'x 92, 95 (2d Cir. 2012) (summary order) (internal quotation marks and citation omitted). "The requisite 'strong inference' of fraud may be established either [i] by

alleging facts to show that defendants had both motive and opportunity to commit fraud, or [ii] by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Lerner*, 459 F.3d at 290-91 (internal quotation marks and citations omitted). The pleading standard under Rule 9(b) "serves to 'provide a defendant with fair notice of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach* v. *Chang*, 355 F.3d 164, 171 (2d Cir. 2004) (quoting *O'Brien* v. *Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

**B.  Analysis**

**1.  The Court May Exercise Personal Jurisdiction over the Individual Defendants**

The Court begins with a threshold question: whether it may exercise specific jurisdiction over the Individual Defendants.[3] It analyzes the issue under New York law. *See Thomas* v. *Ashcroft*, 470 F.3d 491, 495 (2d Cir. 2006) ("The breadth of a federal court's personal jurisdiction is determined by the law of the state in which the district court is located."). The relevant provision of New York's long-arm statute — C.P.L.R. § 302 — provides:

> [A] court may exercise personal jurisdiction over any non-domiciliary … who in person or through an agent: [i] transacts any business within the state or contracts anywhere to supply goods or services in the state; or [ii] commits a tortious act within the state, except as to a cause of action for defamation of character arising

---

[3]  Plaintiff does not allege that general jurisdiction exists over Remke or Blockno. (*See* Pl. Opp. 5-13). For that reason, and because the Court itself sees no basis to exercise general jurisdiction over either of the Individual Defendants, the Court proceeds directly to the specific-jurisdiction inquiry.

from the act; or [iii] commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he [a] regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or [b] expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or [iv] owns, uses[,] or possesses any real property situated within the state.

*Id.*

The Individual Defendants assert that the Court lacks specific jurisdiction over them pursuant to C.P.L.R. § 302(a) "because Plaintiff does not and cannot adequately allege that the Individual Defendants 'in person or through an agent,' did any of the [ ] acts [relevant to the jurisdictional analysis] which gave rise to the claims in the instant case[.]" (Def. Br. 5). In particular, they argue that neither Remke nor Blockno "transacted any business within the state or contract[ed] anywhere to supply goods or services in the state[,]" as required under C.P.L.R. § 302(a)(1). (*Id.* at 6). "[N]either of the Individual Defendants," they observe, "is alleged to have negotiated or even signed any of the agreements at issue." (*Id.* at 8). Instead, according to the Individual Defendants, Plaintiff offers only "generalized, conclusory allegations [that] are entirely insufficient for the exercise of personal jurisdiction." (*Id.*).

The Individual Defendants further claim that the Court lacks specific jurisdiction under C.P.L.R. § 302(a)(3). Under that provision, courts may exercise personal jurisdiction over an individual who, either in person or

through an agent, (i) "commits a tortious act without the state causing injury to person or property within the state" and (ii) "derives substantial revenue from goods used or consumed or services rendered, in the state[.]" *Id.* § 302(a)(3). The Individual Defendants argue that "the amended complaint is bereft of any factual allegations indicating that they committed any tortious act," and that Plaintiff "does not make a *prima facie* showing that the Individual Defendants derived substantial revenue from interstate or international commerce" or "that the situs of injury occurred in New York." (Def. Br. 9-10).

These arguments are unpersuasive, as they fail to account properly for the Court's ability to exercise jurisdiction under an agency theory. In *Kreutter* v. *McFadden Oil Corp.,* the New York Court of Appeals established that an out-of-state corporate officer who has not personally transacted business in New York may still be subject to personal jurisdiction under § 302(a)(1) of New York's long-arm statute, if it can be shown that the corporation transacted business in New York as the officer's agent. 71 N.Y.2d 460, 467 (1988). The *Kreutter* decision "resolve[d] the issue of whether a corporation can act as an agent for an individual for the purposes of § 302(a)(1)." *See Retail Software Servs., Inc.* v. *Lashlee,* 854 F.2d 18, 22 (2d Cir. 1988). To establish personal jurisdiction under an agency theory:

> [a] [p]laintiff need not establish a formal agency relationship between defendants and [the corporation] .... He need only convince the court that [the corporation] engaged in purposeful activities in this State in relation to [plaintiff's] transaction for the benefit of and with the knowledge and consent of the

> [individual] defendants and that they exercised some
> control over [the corporation] in the matter[.]

*Kreutter*, 71 N.Y.2d at 467 (internal citations omitted).

Under *Kreutter* and its progeny, the critical question is whether the out-of-state corporate officers were "'primary actor[s] in the transaction in New York' that is the source of th[e] litigation, and are not 'some corporate employee[s] ... who played no part in' the [transaction]." *Retail Software,* 854 F.2d at 22 (quoting *Kreutter,* 71 N.Y.2d at 470); *see also M. Shanken Commc'ns, Inc.* v. *Cigar500.com,* No. 07 Civ. 7371 (JGK), 2008 WL 2696168, at *6 (S.D.N.Y. 2008) (finding that, to make the requisite showing of control, Plaintiff "must sufficiently detail the defendant[']s conduct so as to persuade a court that the defendant was a primary actor in the specified matter in question; control cannot be shown based merely upon a defendant's title or position ... or upon conclusory allegations that the defendant controls the corporation" (internal quotation marks and citation omitted)).

Plaintiff's allegations, taken as true, are sufficient to establish that the Individual Defendants were "primary actors" in the conduct in question — namely, Mark Line's efforts to persuade property owners at four sites in New York and New Jersey, as well as subcontractors like Plaintiff, to enter into a series of agreements relating to construction projects at those four sites. (*See* FAC ¶¶ 10-12). Indeed, Plaintiff alleged, *inter alia*, that the Individual Defendants: (i) were the sole shareholders and were in exclusive control of Mark Line and over all of its significant business decisions; (ii) maintained

exclusive control of the company's profits, books and records, and checking accounts; (iii) caused Plaintiff and the property owners to rely on statements relating to Mark Line's financial strength and security that the Individual Defendants knew to be untrue when made; and (iv) uttered false statements with the intent to cause Plaintiff to detrimentally rely thereon, as part of a scheme to collect funds without paying their subcontractors. (*Id.* at ¶¶ 20-22).

Any of these allegations, on its own, might not suffice to provide the Court with personal jurisdiction over the Individual Defendants. Indeed, the simple fact that the Individual Defendants were the sole shareholders in Mark Line or maintained exclusive control over the company's profits, bank accounts, and significant business decisions would not be enough to establish that they were "primary actors" in the relevant conduct. *See, e.g.*, *Cigar500.com,* 2008 WL 2696168, at *6 (finding that "control cannot be shown based merely upon a defendant's title or position"). But, combined with allegations that Remke and Blockno solicited business from the property owners in New York and subcontractors, those allegations of exclusive control are sufficient to establish personal jurisdiction.

In *Sterling Interiors Group, Inc.* v. *Haworth, Inc.* — on which Moving Defendants themselves rely (*see* Def. Br. 7-8) — a sister court in this District found that allegations that an individual was "the principal shareholder and an officer and director" at the company and was "believed to be fully aware of and to have consented to and condoned and directed" the company's activities "are sufficient ... to establish the propriety of asserting personal jurisdiction over

[him]." No. 94 Civ. 9216 (CSH), 1996 WL 426379, at *15 (S.D.N.Y. July 30, 1996). Though the Individual Defendants correctly note that they did not "sign[ ] any of the agreements at issue" (Def. Br. 8), that is not dispositive. Instead, Plaintiff need only allege that the Individual Defendants were primary actors in the decisions giving rise to this litigation. *Karabu Corp.* v. *Gitner*, 16 F. Supp. 2d 319, 323 (S.D.N.Y. 1998).

The Court finds that although Plaintiff has not alleged many facts connecting Remke and Blockno to the contracts at issue here, the allegations suffice for purposes of establishing personal jurisdiction under C.P.L.R. § 302(a)(1). Taken as true, the allegations suggest that the Individual Defendants exercised control over Mark Line's decision to enter into the relevant contracts, and that they persuaded Plaintiff and the property owners to do business with Mark Line. For this reason, the Court may exercise personal jurisdiction over Remke and Blockno under C.P.L.R. § 302(a)(1).[4]

### 2. Plaintiff's Breach of Contract Claim Survives

#### a. Plaintiff Has Adequately Pleaded a Claim for Breach of Contract Against Mark Line

Proceeding now to consider the merits of Plaintiff's claims, the Court begins with the viability *vel non* of Plaintiff's breach of contract claim against Mark Line. Under New York law, "[t]o make out a viable claim for breach of contract a complaint need only allege [i] the existence of an agreement,

---

[4]     Having found that the Court may exercise personal jurisdiction over the Individual Defendants under C.P.L.R. § 302(a)(1), the Court declines to analyze whether it could also exercise jurisdiction under C.P.L.R. § 302(a)(3).

[ii] adequate performance of the contract by the plaintiff, [iii] breach of contract by the defendant, and [iv] damages." *Eternity Global Master Fund Ltd.* v. *Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (internal quotation marks and citation omitted). At the pleading stage, "Plaintiff's burden is slight." *Precise-Marketing Corp.* v. *Simpson Paper Co.*, No. 95 Civ. 5629 (LMM), 1996 WL 285364, at *1 (S.D.N.Y. May 30, 1996); *see also Royal Park Inv. SA/NV* v. *The Bank of N.Y. Mellon*, No. 14 Civ. 6502 (GHW), 2016 WL 899320, at *5 (S.D.N.Y. Mar. 2, 2016) (describing the pleading standard as a "low bar"). A party advancing a breach of contract claim need not satisfy the particularity requirement of Rule 9(b). *Bayerische Landesbank, N.Y. Branch* v. *Aladdin Cap. Mgmt. LLC*, 692 F.3d 42, 64 (2d Cir. 2012). And "[c]ourts have generally recognized that relatively simple allegations will suffice to plead a breach of contract claim even post-*Twombly* and *Iqbal*." *OneWest Bank N.A.* v. *Lehman Bros. Holding Inc.*, No. 14 Civ. 8916 (JMF), 2015 WL 1808947, at *4 (S.D.N.Y. Apr. 20, 2015) (citation omitted).

A plaintiff asserting a breach of contract claim "is required only to provide a defendant with a 'short, plain notice' of the claims against it pursuant to Rule 8." *Boart Longyear Ltd.* v. *Alliance Indus., Inc.*, 869 F. Supp. 2d 407, 413 (S.D.N.Y. 2012). A plaintiff "need not attach a copy of the contract to the complaint or plead the contract's terms verbatim," *Castorino* v. *Citibank N.A.*, No. 07 Civ. 10606 (PAC), 2008 WL 5114482, at *2 (S.D.N.Y. Dec. 5, 2008); rather, a plaintiff must only "demonstrate the existence of a contract reflecting the terms and conditions of their purported agreement," *Graham* v. *Select*

*Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 513 (S.D.N.Y. 2016) (citation omitted); *see id.* (finding adequate notice of a breach of contract claim where the plaintiff alleged that defendant "approached him with an offer to modify the terms of [ ] mortgage payments to reduce the monthly payments and that [plaintiff] subsequently made and [defendant] accepted five monthly payments").

Moving Defendants argue that Plaintiff has failed to meet this low threshold. They claim that, "[i]n the amended complaint, Plaintiff merely offers two vague allegations as to the terms of the agreements." (Def. Br. 12). *First*, Moving Defendants point to Plaintiff's allegation "that it and Mark Line 'entered into various agreements' … which reportedly required 'Plaintiff to provide … certain services, equipment[,] and materials relating to' other agreements Mark Line entered into as a general contractor." (*Id.* at 12-13 (quoting FAC ¶ 10)). *Second*, they reference Plaintiff's allegation "that it and Mark Line also 'entered into a series of supplemental agreements … relating to the scope of' [the] services, equipment[,] and materials." (*Id.* at 13 (quoting FAC ¶ 11)). In Moving Defendants' estimation, "[t]hese two vague allegations completely fail to set forth the terms of the agreements upon which Plaintiff's claim is based," and "fail to provide Moving Defendants with fair notice of Plaintiff's claim and the grounds upon which it rests." (*Id.*). Moving Defendants further claim that Plaintiff's allegation that it "'duly performed' all of its duties under the agreement" constitutes "a naked assertion devoid of any factual enhancement."

(*Id.* at 14 (quoting FAC ¶ 14)).  For these reasons, Moving Defendants argue that Plaintiff's breach of contract claim is ripe for dismissal.

The Court disagrees.  Though the factual allegations in the Amended Complaint are sparse, they suffice at this stage of the litigation.  Plaintiff provides sufficient detail regarding the "various agreements" and the "supplemental agreements" to provide the Court and Defendants with notice of the transactions giving rise to this litigation.  Plaintiff identifies the four properties that were the subjects of the agreements: 2226 Ocean Avenue, Brooklyn, New York; Sea Breeze Estates, Marine Street, City Island, Bronx, New York; 700 Bangs Avenue, Asbury Park, New Jersey; and Seabra Hotel, Newark, New Jersey.  (FAC ¶ 10).  Plaintiff also identifies the nature of the work performed in connection with those properties: "professional structural engineering services[.]"  (*Id.* at ¶ 9).  It alleges that it began work under the relevant agreements on June 29, 2016, and "was in full compliance" and "performed all of its duties" as required under the agreements.  (*Id.* at ¶¶ 13-14).  Finally, Plaintiff alleges that Mark Line breached its contracts with Plaintiff by failing to pay for any of the work performed, despite having received "Plaintiff's invoices, account statements[,] and other demands for payment relating to the [p]rojects and the [a]greement[s] without objection."  (*Id.* at ¶¶ 18-19).  These allegations suffice, if barely, to survive the motion to dismiss, as they adequately provide notice to the Court and Defendants of Plaintiff's claim.  *See Comfort Inn Oceanside* v. *Hertz Corp.*, No. 11 Civ. 1534 (JG) (JMA), 2011 WL 5238658, at *6-7 (E.D.N.Y. Nov. 1, 2011) ("While the amended

complaint is devoid of specifics, … those specifics are not required in pleading a breach of contract action.").

The Court pauses to consider an ancillary issue that arises because Plaintiff attached unsigned copies of the Subcontracts to the Declaration of Eric P. Schutzer, filed in support of Plaintiff's opposition brief. (*See* Dkt. #25-1). It is well established that, in adjudicating a motion to dismiss, courts "may consider any documents that are attached to, referenced in, or integral to the preparation of the pleadings." *Miller* v. *Lazard, Ltd.*, 473 F. Supp. 2d 571, 578 (S.D.N.Y. 2007); *see also DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Miotto* v. *Yonkers Public Schs.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y. 2008). Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint "relies heavily upon its terms and effect," thereby rendering the document "integral" to the complaint. *Mangiafico* v. *Blumenthal,* 471 F.3d 391, 398 (2d Cir. 2006) (citation omitted); *see generally Goel* v. *Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (discussing materials that may properly be considered in resolving a motion to dismiss). "[W]here the claim is for breach of contract, the complaint is deemed to incorporate the contract by reference because the contract is integral to the plaintiffs' claim." *Bader* v. *Wells Fargo Home Mortg. Inc.*, 773 F. Supp. 2d 397, 407 (S.D.N.Y. 2011) (quoting *Verzani* v. *Costco Wholesale Corp.,* 641 F. Supp. 2d 291, 297-98 (S.D.N.Y. 2009)).

The Amended Complaint in this case "relies heavily upon [the Agreements'] terms and effect[.]" *Mangiafico*, 471 F.3d at 398. Plaintiff alleges

that it entered into a series of agreements with Mark Line in 2016-2017; that the agreements called for Plaintiff to provide engineering services, equipment, and materials; that Plaintiff complied with the terms of the Subcontracts; and that Defendants failed to pay Plaintiff. (FAC ¶¶ 11-12, 14-19). The Subcontracts and supplemental agreements are "integral" to these allegations, which themselves form the core of Plaintiff's claims. For that reason, the Court may consider the contracts attached to the Schutzer Declaration, filed alongside Plaintiff's opposition brief.

That the versions attached to the Declaration were not fully executed, but instead were signed only by Plaintiff, does not alter the analysis. A review of relevant cases from this District suggests that the relevant inquiry is not whether the attached documents were fully executed, but whether they were relied upon in the pleadings. *Compare Pearce* v. *Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 178 (S.D.N.Y. 2007) ("[T]he Court may not consider an unsigned draft agreement ... because it is not annexed to or referenced in the Complaint, and because Plaintiff did not rely on it in drafting the Complaint."), *with Berman* v. *Sugo LLC*, 580 F. Supp. 2d 191, 201 (S.D.N.Y. 2008) ("The unsigned Operating Agreement ... is also within the scope of the Court's review on this motion to dismiss because it is incorporated into the Counterclaims by reference or through [defendants'] reliance in making their allegations[.]"). In other words, the focus is on whether Plaintiff relies on the extrinsic documents such that they are "integral to the complaint." *Cortec Indus., Inc.* v. *Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991).

Because (i) the contracts that Plaintiff attached to the Schutzer Declaration were integral to the Amended Complaint, (ii) Plaintiff relied heavily on the documents in the pleadings, and (iii) Moving Defendants elected in their reply papers not to dispute the authenticity or relevance of the attached documents, the Court may consider them. Though the Court has already found, independently of the unsigned contracts, that Plaintiff has sufficiently alleged a breach of contract claim against Mark Line, the contracts attached to the Schutzer Declaration provide further grounds on which to deny the motion to dismiss.

**b.  Plaintiff's Breach of Contract Claim Survives as to Defendants Blockno and Remke**

The Court separately analyzes the breach of contract claim against the Individual Defendants, neither of whom is alleged to have been a party to the contract between Plaintiff and Mark Line. Instead, Plaintiff asserts a breach of contract claim against the Individual Defendants under a theory of alter ego liability. (Pl. Opp. 18-19). Under New York law, a corporate officer "who was not a party to the corporation's contract, may be held personally liable for its breach if, disregarding the corporate form, he exercised such dominion and control over [the corporation's] operations that the corporation became his alter ego, a vehicle for purely personal rather than corporate ends[.]" *Bonanni* v. *Straight Arrow Publishers, Inc.*, 520 N.Y.S.2d 7, 9 (1st Dep't 1987) (citations omitted). "In determining whether to disregard the corporate entity, 'the critical question is whether the corporation is a shell being used by the individual

shareowners to advance purely personal rather than corporate ends.'" *Kinetic Instruments, Inc.* v. *Lares*, 802 F. Supp. 976, 985 (S.D.N.Y. 1992) (quoting *Wm. Passalacqua Builders, Inc.* v. *Resnick Developers S., Inc.*, 933 F.2d 131, 138 (2d Cir. 1991)). A plaintiff seeking to pierce the corporate veil under an alter ego theory must also make "some showing of a wrongful or unjust act toward plaintiff[.]" *Matter of Morris* v. *N.Y. State Dep't of Tax'n and Fin.,* 82 N.Y.2d 135, 141-42 (1993).

To avoid dismissal, a party seeking application of the alter ego doctrine must assert factual allegations as to both the "control" and "wrongful act" prongs of the veil-piercing inquiry. *See EED Holdings* v. *Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005); *JSC Foreign Econ. Ass'n Technostroyexport* v. *Int'l Dev. & Trade Servs.,* 295 F. Supp. 2d 366, 379 (S.D.N.Y. 2003). Courts impose a high bar to claims advanced under a theory of alter ego liability: They "permit veil-piercing only under 'extraordinary circumstances.'" *EED Holdings*, 228 F.R.D. at 512 (quoting *Murray* v. *Miner*, 74 F.3d 402, 404 (2d Cir. 1996)). That said, "New York courts have recognized that a veil-piercing theory often necessitates a fact-laden inquiry and thus is [often] unsuited for resolution on a pre-answer, pre-discovery motion to dismiss." *City of Almaty* v. *Ablyazov*, 278 F. Supp. 3d 776, 799 (S.D.N.Y. 2017) (internal quotation marks and citations omitted).

Here, Plaintiff has adequately alleged that the Individual Defendants exercised dominion and control over Mark Line. He alleges that they (i) were the sole shareholders of Mark Line; (ii) made all of Mark Line's significant

business decisions; and (iii) maintained exclusive control over the company's profits, books, records, and checking accounts. (FAC ¶¶ 20-21). In light of the liberal standard under which Plaintiff's pleadings are to be reviewed, these allegations, taken as true, are sufficient to establish the requisite dominion and control over the corporation.

Plaintiff has also adequately alleged that the corporation was "a vehicle for purely personal rather than corporate ends[.]" *Bonanni*, 520 N.Y.S.2d at 9. Here, Plaintiff advances several relevant allegations. It claims that the Individual Defendants "failed to properly capitalize Mar[k L]ine"; converted corporate funds for their own use; "stripped Mar[k L]ine of all of its assets, causing [it] to become judgment-proof"; and "used [it] as a mere instrumentality, agent, alter ego[,] and façade[.]" (FAC ¶¶ 21, 26, 28). And Plaintiff has sufficiently alleged that the Individual Defendants' domination over Mark Line was used to commit a wrong against the Plaintiff — namely, inducing Plaintiff to provide engineering services, collecting payments from property owners for those services, and then failing to pay Plaintiff while stripping Mark Line's assets to ensure that Plaintiff (and other subcontractors) would not be paid. (*See id.* at ¶¶ 11-17, 22, 24, 26-28).

Taken together, these allegations suffice at this stage of the litigation to support a veil-piercing theory of liability as to the Individual Defendants. *See, e.g.*, *City of Almaty*, 278 F. Supp. 3d at 800. Although the Court is somewhat skeptical that discovery will produce evidence to substantiate Plaintiff's allegations that Mark Line operated as the Individual Defendants' alter ego, on

a motion to dismiss, the Court must take these allegations as true. Accordingly, Plaintiff's breach of contract claim survives as to the Individual Defendants.

### 3. The Court Dismisses Certain of Plaintiff's Claims As Duplicative

The Court next turns to Moving Defendants' argument that many of Plaintiff's tort-based and quasi-contract claims must be dismissed as duplicative of the breach of contract claim. Moving Defendants argue that Plaintiff's claims for account stated, unjust enrichment, goods sold and delivered, breach of fiduciary duty, breach of constructive trust, conversion, and promissory estoppel are all duplicative. (Def. Br. 15-16). The Court agrees with Moving Defendants as to the account stated, constructive trust, and goods sold and delivered claims, but not as to the other claims. It addresses each cause of action in turn.

#### a. The Account Stated Claim Is Duplicative

To state a claim for account stated, a plaintiff must allege that "[i] an account was presented; [ii] it was accepted as correct; and [iii] [the] debtor promised to pay the amount stated." *Consol. Energy Design Inc.* v. *Princeton Club of N.Y.*, 590 F. App'x 115, 116 (2d Cir. 2015) (summary order) (internal citation omitted). It is well established that "a claim for an account stated may not be utilized simply as another means to attempt to collect under a disputed contract." *Media Tenor Int'l AG* v. *Medco Health Solutions, Inc.,* No. 13 Civ. 7223 (DLC), 2014 WL 2933215, at *8 (S.D.N.Y. June 27, 2014) (quoting *Martin*

*H. Bauman Assocs., Inc.* v. *H & M Int'l Transport, Inc.,* 567 N.Y.S.2d 404, 409 (1st Dep't 1991)). A "[d]efendant cannot be found liable on both an account stated claim ... and a breach of contract claim ... in connection with the same allegations of a failure to pay monies owed." *Wachtel & Masyr LLP* v. *Brand Progression LLC*, No. 11 Civ. 7398 (LTS) (MHD), 2012 WL 523621, at *1 (S.D.N.Y. Feb. 15, 2012). "An account stated claim should not be dismissed as duplicative of a breach of contract claim, however, if the account stated claim gives rise to different damages." *Media Tenor Int'l*, 2014 WL 2933215, at *8 (citing *NetJets Aviation, Inc.* v. *LHC Commc'ns, LLC*, 537 F.3d 168, 175 (2d Cir. 2008)).

Here, the facts giving rise to Plaintiff's account stated are co-extensive with those giving rise to the breach of contract claim. Indeed, the allegation, advanced in support of the account stated claim, that "Defendants accepted Plaintiff's invoices and/or account statements without objection and made partial payments in response thereto" echoes the allegation, advanced in support of the breach of contract claim, that "Defendants w[ere] in default of the [contract] as a result of Defendant[s'] failure to make payments required to be made to Plaintiff pursuant to the [contract]." (FAC ¶¶ 35, 48). And the damages that Plaintiff seeks are identical: under each cause of action, Plaintiff seeks $119,654 in damages, plus attorney's fees of $39,884.67. (*Compare id.* at ¶ 40, *with id.* at ¶ 49). The Court therefore dismisses Plaintiff's account stated claim. *See Fort Prod., Inc.* v. *Men's Med. Clinic, LLC*, No. 15 Civ. 376 (NSR), 2016 WL 797577, at *4 (S.D.N.Y. Feb. 23, 2016).

### b. The Constructive Trust Claim Is Duplicative

Under New York law, the elements of a constructive trust are: "[i] a confidential or fiduciary relationship; [ii] a promise, express or implied; [iii] a transfer made in reliance on that promise; and [iv] unjust enrichment." *In re Ades and Berg Grp. Inv.*, 550 F.3d 240, 245 (2d Cir. 2008) (citing *Sharp* v. *Kosmalski*, 40 N.Y.2d 119, 121 (1976)).  Where a plaintiff advances a breach of contract claim, a constructive trust claim will only be viable where the plaintiff alleges "distinct harm or actions giving rise to a[ ] separate claim of … constructive trust." *Spanierman Gallery PSP, LLC* v. *Love*, No. 03 Civ. 3188 (VM), 2003 WL 22480055, at *4 (S.D.N.Y. Oct. 31, 2003).  The constructive trust claim must also arise from a distinct set of "operative facts as [the] contract breach claim." *Physicians Mut. Ins. Co.* v. *Greystone Servicing Corp., Inc.*, No. 07 Civ. 10490 (NRB), 2009 WL 855648, at *11 (S.D.N.Y. Mar. 25, 2009).  Even then, courts will not impose a constructive trust unless "it is demonstrated that a legal remedy is inadequate," *Bertoni* v. *Catucci,* 498 N.Y.S.2d 902, 905 (3d Dep't 1986), and the constructive trust is "essential to prevent unjust enrichment," *Counihan* v. *Allstate Ins. Co.,* 194 F.3d 357, 362 (2d Cir. 1999).

Plaintiff's constructive trust claim arises from the same set of facts as the breach of contract claim.  The sole factual allegation advanced in support of the constructive trust claim is that, "[a]t Defendants['] express and/or implied request and to the benefit of Defendants, Plaintiff provided goods and services for which Defendants failed to provide Plaintiff with compensation." (FAC

¶ 51).  That is entirely subsumed within the facts alleged in support of the breach of contract claim.  (*See id.* at ¶¶ 29-35).  And the damages sought are identical in each instance.  (*Compare id.* at ¶ 40, *with id.* at ¶ 76).  Because the facts alleged and damages sought for the constructive trust claim are the same as those for the breach of contract claim, and because Plaintiff has not demonstrated that the available legal remedy is inadequate, Plaintiff's constructive trust claim fails.

### c.     The Goods Sold and Delivered Claim Is Duplicative

Plaintiff advances a claim for goods sold and delivered, which under New York law requires Plaintiff to show that:  "[i] it had a contract with the buyer; [ii] the buyer failed to pay the purchase price; and [iii] the buyer accepted the goods."  *Kasper Glob. Collection & Brokers, Inc.* v. *Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 571 (S.D.N.Y. 2013).  The claim for goods sold and delivered is, in fact, a type of breach of contract claim.  *See Shanghai Weiyi Int'l Trade Co., Ltd.* v. *Focus 2000 Corp.*, No. 15 Civ. 3533 (CM), 2015 WL 6125526, at *6 (S.D.N.Y. Oct. 16, 2015).  Here, Plaintiff's allegations in support of the claim for goods sold and delivered are identical to those giving rise to the breach of contract claim.  In connection with the former, Plaintiff merely asserts that "from on or about June 29, 2016 through on or about May 1, 2017, Plaintiff performed the [w]ork at the … request of Defendants"; the services and labor performed "are valued at $119,654"; and "Defendants have refused to make payment[.]"  (FAC ¶¶ 42-44).  The facts alleged and the damages sought under this cause of action are identical to those for the breach

of contract claim. For that reason, and because a claim for goods sold and delivered is itself a type of breach of contract claim, the former is duplicative. Plaintiff's claim for goods sold and delivered is therefore dismissed.

### d. The Unjust Enrichment Claim Is Not Duplicative

Other of Plaintiff's claims, however, are not duplicative. With respect to the unjust enrichment claim, New York law requires a plaintiff to "establish [i] that the defendant benefitted; [ii] at the plaintiff's expense; and [iii] that equity and good conscience require restitution." *Kaye* v. *Grossman*, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). The New York Court of Appeals has explained that "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter[.]" *Clark-Fitzpatrick, Inc.* v. *Long Is. R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citing *Blanchard* v. *Blanchard,* 201 N.Y. 134 (1911)). Indeed, "when a 'matter is controlled by contract,' the plaintiff has no valid claim for unjust enrichment under New York law." *Marshall* v. *Hyundai Motor Am.*, 51 F. Supp. 3d 451, 471 (S.D.N.Y. 2014) (quoting *Goldman* v. *Metro. Life Ins. Co.*, 5 N.Y.3d 561, 587 (2005)). That is because "[t]he theory of unjust enrichment lies as a quasi-contract claim[:] It is an obligation the law creates in the absence of any agreement." *Diesel Props S.r.l.* v. *Greystone Bus. Credit II LLC*, 631 F.3d 42, 54 (2d Cir. 2011) (quoting *Goldman*, 5 N.Y.3d at 572).

Yet where there is a "bona fide dispute over the existence of the contract," a claim for unjust enrichment must not be dismissed as duplicative

of a breach of contract claim. *Shanghai Weiyi*, 2015 WL 6125526, at *6 (internal quotation marks and citations omitted); *see also Chigirinskiy* v. *Panchenkova*, No. 14 Civ. 4410 (JPO), 2015 WL 1454646, at *18 (S.D.N.Y. Mar. 31, 2015) (holding that "unjust enrichment may be pleaded in the alternative to breach of contract"); *St. John's Univ., N.Y.* v. *Bolton,* 757 F. Supp. 2d 144, 183 (E.D.N.Y. 2010) (explaining that, "[a]t the pleading stage, [p]laintiff is not required to guess whether it will be successful on its contract, tort, or quasi-contract claims"). Dismissal of an unjust enrichment claim for duplication is only warranted where "the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties[.]" *Clark-Fitzpatrick*, 70 N.Y.2d at 389 (citations omitted).

The question, then, is whether there is a bona fide dispute as to the existence, validity, or relevance of the contracts at issue here. That Moving Defendants question the existence and validity of the relevant contracts is apparent from the face of their opening brief. When discussing the agreements at issue, Moving Defendants consistently refer to them as "alleged" agreements. (*See* Def. Br. 1, 3, 13). They note that "neither Remke nor Blockno signed any agreement with Plaintiff." (*Id.* at 14). And they do not concede that any agreement that Mark Line may have entered into was executed. (*See id.* at 13 ("Moving Defendants are not even informed of the number of agreements allegedly at issue or whether those agreements were fully executed.")). To be sure, Moving Defendants contest the sufficiency of Plaintiff's pleadings, rather

28

than the agreements' enforceability.  But in arguing that Plaintiff has failed adequately to allege which agreements were breached, Moving Defendants implicitly call into question the existence and validity of any such agreements. For that reason, and because Plaintiff has failed to attach an executed copy of any of the agreements at issue, the Court cannot find that Plaintiff's unjust enrichment claim is duplicative of its breach of contract claim.[5]

### e.   The Claims for Breach of Fiduciary Duty and Promissory Estoppel Are Not Duplicative

The general rule in New York is that a claim for breach of fiduciary duty "must be dismissed as duplicative of a breach of contract claim if the parties owe each other no duty independent of the contract itself." *Perkins* v. *Am. Transit Ins. Co.*, No. 10 Civ. 5655 (CM), 2013 WL 174426, at *10 (S.D.N.Y. Jan. 15, 2013).  To maintain a breach of fiduciary duty claim alongside a claim for breach of contract, a plaintiff must allege that "apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone, so as to permit a cause of action for breach of fiduciary duty independent of the contractual duties."  *N. Shipping Funds I, LLC* v. *Icon Cap. Corp.*, 921 F. Supp. 2d 94, 105 (S.D.N.Y. 2013) (quoting *Balta* v. *Ayco Co.*, 626 F. Supp. 2d 347, 360-61 (W.D.N.Y. 2009)).[6]

---

[5]    The Court dismisses the unjust enrichment claim on separate grounds.  (*See* discussion *infra* at Section 4).

[6]    A contract may, in some circumstances, create a fiduciary relationship.  As one sister court in this District has explained, "[i]f a contract establishes a relationship of trust and confidence between the parties … then a fiduciary duty arises from the contract which is independent of the contractual obligation."  *Lumbermens Mut. Cas. Co.* v. *Franey Muha Alliant Ins. Servs.*, 388 F. Supp. 2d 292, 305 (S.D.N.Y. 2005) (quoting *GLM Corp.* v. *Klein*, 665 F. Supp. 283, 286 (S.D.N.Y. 1987)).  However, Plaintiff has not

Plaintiff argues that "[u]nder New York's Lien Law, a general contract ... and its principals and controlling officers ... automatically become trustees of any monies received from a project owner, and they owe a fiduciary duty to their subcontractors[.]" (Pl. Opp. 11). In its pleadings, Plaintiff alleges that "Defendants received payments from the [property owners] for the [work performed by Plaintiff.]" (FAC ¶ 66). It further alleges that Defendants "were under a fiduciary duty to distribute and pay Plaintiff from the [proceeds]." (*Id.* at ¶ 67).

The Court agrees. The New York Court of Appeals has explained that "Article 3-A of the Lien Law creates 'trust funds out of certain construction payments or funds to assure payment of subcontractors, suppliers, architects, engineers, [and] laborers[.]'" *Aspro Mech. Contracting* v. *Fleet Bank*, 1 N.Y.3d 324, 328 (2004). The purpose of Article 3-A is to ensure that "'those who have directly expended labor and materials to improve real property ... at the direction of the owner or a general contractor' receive payment for the work actually performed." *Canron Corp.* v. *City of N.Y.*, 89 N.Y.2d 147, 155 (1996) (quoting *West-Fair Elec. Contractors* v. *Aetna Cas. & Sur. Co.*, 87 N.Y.2d 148, 157 (1995)).

The funds that Mark Line allegedly received from the owners of the properties in New York and New Jersey are subject to New York's Lien Law. The statute covers "funds ... received by a contractor under or in connection

alleged that the contracts at issue here expressly discussed or otherwise created fiduciary duties.

with a contract for an improvement of real property, or home improvement[.]"
N.Y. Lien Law § 70. The disputed funds in this action are just that: Moving
Defendants allegedly received the funds from the property owners in
connection with work actually performed. (FAC ¶ 71 ("The Project Trust Funds
are amounts Defendants received from the Owners for improvements to the
Premises[.]")).

The statute requires that assets "of which a contractor … is trustee shall
be held and applied for the following expenditures arising out of the
improvement of real property … : [i] payment of claims of subcontractors,
architects, engineers, surveyors, laborers[,] and materialmen[.]" N.Y. Lien Law
§ 71(2)(a). Plaintiff alleges that it was one such subcontractor, that Mark Line
received payments from project owners, and that Mark Line failed to pay its
subcontractors. (FAC ¶¶ 11-12, 15-16). It is well established that a "general
contractor becomes a fiduciary over the accounts received to complete the
construction project and any use of those assets for a purpose other than the
costs associated with that project constitutes a diversion of the funds and a
breach of the fiduciary's duty[.]" *N.Y. Prof. Drywall of OC, Inc.* v. *Rivergate Dev.,
LLC*, 952 N.Y.S.2d 852, 854 (3d Dep't 2012). Because Plaintiff has adequately
alleged a fiduciary duty that arose independently from the contractual terms,
its breach of fiduciary duty claim is not duplicative of the breach of contract
claim.

Plaintiff's promissory estoppel claim survives for the same reason. Like a
breach of fiduciary duty claim, "[a] promissory estoppel claim is duplicative of a

31

breach of contract claim unless the plaintiff alleges that the defendant had a duty independent from any arising out of the contract." *Benefitvision Inc.* v. *Gentiva Health Servs., Inc.,* No. 09 Civ. 0473 (DRH) (AKT), 2014 WL 298406, at *9 (E.D.N.Y. Jan. 28, 2014) (quoting *Underdog Trucking, LLC, Reggie Anders* v. *Verizon Servs. Corp.*, No. 09 Civ. 8918 (DLC), 2010 WL 2900048, at *6 (S.D.N.Y. July 20, 2010)); *cf. Rapay* v. *Chernov*, No. 16 Civ. 4910 (DLC), 2017 WL 892372, at *5 (S.D.N.Y. Mar. 6, 2017) ("In the absence of a duty independent of an agreement, a promissory estoppel claim is duplicative of a breach of contract claim, even if the contract is found to be defective." (internal brackets, quotation marks, and citation omitted)).

The Court has already found that Plaintiff adequately alleged a duty that arose independently of the parties' contract. And Plaintiff has sufficiently alleged the elements of a promissory estoppel claim: "[i] a sufficiently clear and unambiguous promise; [ii] reasonable reliance on the promise; and [iii] injury caused by the reliance[.]" *Castellotti* v. *Free*, 27 N.Y.S.3d 507, 513 (1st Dep't 2016). Indeed, Plaintiff claims that it reasonably relied on Defendants' promises to pay Plaintiff for work performed, and continued to provide labor and materials to the projects, for which it was never paid. (FAC ¶¶ 61-63). Plaintiff's promissory estoppel claim therefore survives.

### f. The Conversion Claim Is Not Duplicative

Under New York law, to plead a claim of conversion, a plaintiff must establish that "[i] the property subject to conversion is a specific identifiable thing; [ii] plaintiff had ownership, possession[,] or control over the property

before its conversion; and [iii] defendant exercised an unauthorized dominion over the thing in question, to the alteration of its condition or to the exclusion of the plaintiff's rights." *Ellington Credit Fund, Ltd.* v. *Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162, 204 (S.D.N.Y. 2011) (citing *Moses* v. *Martin,* 360 F. Supp. 2d 533, 541 (S.D.N.Y. 2004)). "For a claim of conversion to survive a motion to dismiss, it is not enough merely to incorporate the factual allegations relating to breach of contract." *Frontline Processing Corp.* v. *Merrick Bank Corp.*, No. 13 Civ. 3956 (RPP), 2014 WL 837050, at *6 (S.D.N.Y. Mar. 3, 2014). Rather, a conversion claim may only succeed if a plaintiff alleges wrongs and damages distinct from those predicated on a breach of contract. *See Command Cinema Corp.* v. *VCA Labs, Inc.,* 464 F. Supp. 2d 191, 199 (S.D.N.Y. 2006); *Priolo Commc'ns, Inc.* v. *MCI Telecomm. Corp.*, 669 N.Y.S.2d 376, 377 (1998). To assess the viability of a conversion claim where plaintiff also alleges breach of contract, courts "look both to the material facts upon which each claim is based and to the alleged injuries for which damages are sought." *Greystone Servicing Corp.,* 2009 WL 855648, at *10 (internal citation omitted).

Plaintiff's conversion claim is based on many of the same factual allegations as the breach of contract claim. (*Compare* FAC ¶¶ 32-37, *with id.* at ¶¶ 79-82). Yet the conversion claim includes an allegation of "willful" and "malicious" conduct — namely, a "pattern" of knowing participation in the conversion of "Trust Funds" for "the[ Individual Defendants'] own use." (*Id.* at ¶¶ 81-84). Plaintiff alleges that the conduct was "morally culpable and … actuated by Defendants' … reprehensible motive to defraud its suppliers for its

own pecuniary gain," and seeks punitive damages in connection thereto.  (*Id.* at

¶ 86).  These additional allegations, and the claim for punitive damages,

distinguish the conversion claim from the breach of contract claim.  As alleged,

the conversion claim sets forth additional facts and seeks distinct damages

than does the claim for breach of contract.  For that reason, the conversion

claim is not duplicative.

Moving Defendants might argue that punitive damages are unavailable

because Plaintiff has not shown, as it must do under New York law, that

defendant's conduct is "actionable as an independent tort[.]"  *Rocanova* v.

*Equitable Life Assur. Soc'y of U.S.*, 83 N.Y.2d 603, 613 (1994).  But any such

argument would fail because "[p]unitive damages are available for conversion

'where circumstances show that the conversion was accomplished with malice,

insult, reckless[,] and willful disregard for plaintiff's rights, or by other proof

evidencing the aggravated nature of the act.'"  *Morales* v. *Kavulich & Assocs.,*

*P.C.*, 294 F. Supp. 3d 193, 198 (S.D.N.Y. 2018) (quoting *Caballero* v. *Anselmo*,

759 F. Supp. 144, 153 (S.D.N.Y. 1991)).  Here, Plaintiff has alleged just that.

Though the evidence produced in discovery may ultimately fail to substantiate

its conversion claim, Plaintiff has sufficiently alleged facts and damages

distinct from those associated with the breach of contract claim to survive the

motion to dismiss.[7]

---

[7]     Moving Defendants seek dismissal on a separate ground:  They argue that Plaintiff has
abandoned the conversion claim because it did not respond, in its opposition brief, to
Moving Defendants' argument that the conversion claim is duplicative of the breach of
contract claim.  (Def. Reply 7).  Yet Plaintiff does address the issue, if indirectly and in
cursory fashion.  Plaintiff addresses the point in a section of its opposition brief entitled,

### 4. Plaintiff's Claims for Fraudulent Inducement, Unjust Enrichment, and Violation of DCL § 276 Fail to Meet the Heightened Pleading Standard Under Rule 9(b)

The Court next turns to Moving Defendants' argument that three of Plaintiff's claims — fraudulent inducement, unjust enrichment, and violation of DCL § 276 — fail to satisfy the heightened pleading standard of Rule 9(b), which requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The Court agrees with Moving Defendants, and addresses each claim in turn.

#### a. Plaintiff's Claim for Fraudulent Inducement Is Inadequately Pleaded

As noted, state-law fraud claims brought in a diversity action, including claims for fraudulent inducement, must be pleaded with particularity pursuant to Rule 9(b).  *Premium Mortg. Corp.* v. *Equifax, Inc.,* 583 F.3d 103, 108 (2d Cir. 2009); *see also Eaves* v. *Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 255 (S.D.N.Y. 2011).  In addition to pleading with specificity, the plaintiff must "allege facts that give rise to a strong inference of fraudulent intent."  *Berman,* 455 F. App'x at 95.

Plaintiff's allegations are insufficient to state a claim for fraudulent inducement.  The relevant allegations are simply that:  (i) "[a]t the request of the Defendants and in actual reliance upon their representations regarding Mar[k L]ine's financial strength and stability, as well as[ ] Mar[k L]ine's

---

"Defendants['] Duplicative Claims Argument," and suggests that a violation of the Lien Laws gives rise to a conversion claim independent of any breach of contract.  (Pl. Opp. 21-23).

repeated promises of payment ... Plaintiff entered into the Agreement"; (ii) "[t]he Promise ... was made in order to induce Plaintiff to enter into the agreement"; and (iii) "Defendants knew ... that such representations were false ... [and] had no intention of ever paying the outstanding balance owed to Plaintiff[.]"  (FAC ¶¶ 88-91).  Plaintiff fails to identify the statements with specificity.  Plaintiff also fails to identify the individual speaker for each communication.  And Plaintiff does not allege where and when the statements were made. Accordingly, Plaintiff has failed to meet the heightened pleading requirement specified by Rule 9(b).  *Lerner,* 459 F.3d at 290; *see also McCormack* v. *IBM,* 145 F. Supp. 3d 258, 269 (S.D.N.Y. 2015).

### b.  Plaintiff's Claim for Violation of DCL § 276 Is Inadequately Pleaded

Rule 9(b) also applies to state-law claims for intentional fraudulent conveyance under DCL § 276.  *See In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005); *Atlanta Shipping Corp.* v. *Chem. Bank*, 818 F.2d 240, 251 (2d Cir. 1987).[8]  Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent ... to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  N.Y. Debt & Cred. Law § 276.  "[T]he intent of the transferor *and* the transferee must be properly pleaded to state a claim for relief under DCL § 276."  *In re Actrade Fin. Tech. Ltd.*, 337 B.R. 791, 808 (Bankr. S.D.N.Y. 2005) (collecting cases).

---

[8]    The New York Debtor and Creditor Law is analyzed in greater detail *infra* at Section 5.

In support of its Section 276 claim, Plaintiff advances the same allegations that this Court has already found to be insufficient to meet the heightened pleading standard for claims sounding in fraud. (*See* FAC ¶ 115). The only other allegation advanced in support of the claim is: "Upon information and belief, Remke and Blockno made the Conveyance with the actual intent to hinder, delay, and/or defraud the present and future creditors of Mar[k L]ine." (*Id.* at ¶ 116). Plaintiff does not specify when or how the allegedly fraudulent conveyance was made. It merely asserts, in conclusory terms, that Remke and Blockno fraudulently conveyed the disputed funds. That is insufficient to state a claim under Section 276, and the claim is therefore dismissed.

### c. Plaintiff's Unjust Enrichment Claim Is Inadequately Pleaded

Unjust enrichment claims are subject to Rule 9(b)'s heightened pleading standard where a defendant's fraudulent conduct constitutes the basis for the unjust enrichment claim. *Minnie Rose LLC* v. *Yu*, 169 F. Supp. 3d 504, 521 (S.D.N.Y. 2016) (explaining that "unjust enrichment claims grounded in fraud must meet the pleading requirements of Rule 9(b)"); *see also Benefield* v. *Pfizer Inc.*, 103 F. Supp. 3d 449, 465 (S.D.N.Y. 2015) (holding that "Plaintiffs cannot avoid the heightened pleading requirement of Federal Rule 9(b) by casting their fraud claim as one for unjust enrichment."). "To determine whether Rule 9(b) applies, courts conduct a 'case-by-case analysis of particular pleadings to determine whether the gravamen of the complaint is plainly fraud.'" *Tyman* v.

*Pfizer, Inc.*, No. 16 Civ. 6941 (LTS) (BCM), 2017 WL 6988936, at *8 (S.D.N.Y. Dec. 27, 2017) (quoting *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 632 (S.D.N.Y. 2007)).  "As part of this inquiry, courts look for references to … allegations of fraudulent concealment, fraudulent misrepresentations, and deceptive practices, based on a defendant's knowing acts."  *Miller* v. *Hyundai Motor Am.*, No. 15 Civ. 4722 (TPG), 2016 WL 5476000, at *14 (S.D.N.Y. Sept. 28, 2016) (internal quotation marks and citation omitted).  "Where the case as a whole is premised on allegations of this nature, the trial court 'is not required to sift through allegations of fraud in order to find claims not subject to Rule 9(b).'"  *Tyman*, 2017 WL 6988936, at *8 (quoting *In re Ford Fusion & C-Max Fuel Econ. Litig.*, No. 13-MD-2450 (KMK), 2015 WL 7018369, at *14 (S.D.N.Y. Nov. 12, 2015)).

Here, Plaintiff's claim for unjust enrichment is bound up in other of its claims sounding in intentional fraud.  The unjust enrichment claim incorporates by reference the allegations that (i) "Remke and Blockno [ ] caused Plaintiff … to rely on statements relating [to] Mar[k L]ine's financial strength and security, which Remke and Blockno knew to be untrue" and (ii) the Individual Defendants made false statements with "specific intent to cause Plaintiff and the Owners to detrimentally rely thereon" as part of a "scheme for Mar[k L]ine to collect the Project Trust Funds, which funds Remke and Blockno could then convert for their own use[.]"  (FAC ¶¶ 22, 50).  Because the Court is unable to construe the claim independently of the fraud allegations, the claim must be pleaded in accordance with Rule 9(b).  *See DeBlasio* v. *Merrill Lynch &*

*Co., Inc.*, No. 07 Civ. 318 (RJS), 2009 WL 2242605, at *11 (S.D.N.Y. Jul. 27, 2009).

Just as Plaintiff's fraudulent inducement claim fails to meet the heightened pleading requirement, so too does its unjust enrichment claim. Plaintiff states, without sufficient specificity, that Plaintiff provided "goods and services" at "Defendants' express and/or implied request," but that "Defendants failed to provide Plaintiff with compensation." (FAC ¶ 51). Those allegations do not allege with particularity the facts giving rise to the claim. For that reason, the Court dismisses Plaintiff's unjust enrichment claim.

### 5.   Plaintiff's Claims for Violations of Debtor and Creditor Law §§ 273, 274, 275 Are Adequately Pleaded

The Court next addresses Moving Defendants' argument that the claims under DCL §§ 273, 274, and 275 are inadequately pleaded. New York's Debtor and Creditor Law consists of "a set of legal rather than equitable doctrines, whose purpose is not to provide equal distribution of a debtor's estate among creditors, but to aid specific creditors who have been defrauded by the transfer of a debtor's property." *HBE Leasing Corp.* v. *Frank*, 48 F.3d 623, 634 (2d Cir. 1995). Collectively, Sections 273, 274, and 275 outline the statutory requirements for constructive fraud.

Section 273 governs transfers of assets by insolvent debtors. It provides that "[e]very conveyance made ... by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made ... without a fair consideration." N.Y. Debt. & Cred. Law

§ 273.  Section 274 governs transfers of assets by entities with pending or imminent business transactions.  It provides that "[e]very conveyance made without fair consideration when the person making it is engaged … in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to creditors … without regard to his actual intent."  *Id.* § 274.  And Section 275, which applies where the transferor intends to incur debt, provides that "[e]very conveyance made … without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors."  *Id.* § 275.

All three sections require a plaintiff to allege that a conveyance was made without fair consideration.  *See Friedman* v. *Wahrsager*, 848 F. Supp. 2d 278, 291 (E.D.N.Y. 2012).  Under the DCL, fair consideration exists where the transferor, in good faith, receives "fair equivalent" property or a similarly equivalent antecedent debt is discharged.  N.Y. Debt. & Cred. Law § 272(a); *see also In re Sharp Int'l Corp.*, 403 F.3d at 53 (The "fair consideration test" states that:  "[i] the recipient of the debtor's property must either (a) convey property in exchange or (b) discharge an antecedent debt in exchange; and [ii] such exchange must be a fair equivalent of the property received; and [iii] such exchange must be in good faith." (internal quotation marks, brackets, and citation omitted)).

Moving Defendants argue that "Plaintiff fails to sufficiently allege the absence of fair consideration[.]" (Def. Br. 20).  They assert that Plaintiff "merely alleges, in conclusory fashion … , that unidentified 'assets' were conveyed 'without fair consideration.'" (*Id.* (citing FAC ¶¶ 100, 101, 112)).  They further contend that "Plaintiff offers nothing more," and its Section 273, 274, and 275 claims "should thus be dismissed." (*Id.*).

Contrary to Moving Defendants' argument, Plaintiff has pleaded sufficient facts to satisfy its burden as to the adequacy of the consideration offered for the asset transfers.  The Amended Complaint alleges that Remke and Blockno convinced subcontractors to perform work, failed to pay the subcontractors out of project funds collected from property owners, and then transferred assets out of Mark Line to avoid paying creditors.  Plaintiff states that, "after receipt of the Project Trust Funds, Remke and Blockno caused Mar[k L]ine to … shut its doors" and "caused the Project Trust Funds to be misappropriated and … misused[.]" (FAC ¶ 24).  Plaintiff further asserts: "Remke and Blockno ha[ve] since stripped Mar[k L]ine of all of its assets, causing Mar[k L]ine to become judgment-proof[.]" (*Id.* at ¶ 26).  They did so "in an attempt to escape … Mar[k L]ine's obligations to its creditors, including the Plaintiff." (*Id.* at ¶ 287.  And the conveyance was made "without fair consideration and rendered Mar[k L]ine insolvent[.]" (*Id.* at ¶ 101).  Without discovery, Plaintiff cannot be expected to provide strong evidence of an absence of consideration exchanged for the trust assets.  The allegations, considered together and taken as true, suggest that there was in fact no consideration

41

paid for the trust assets, but instead that the Individual Defendants simply stripped Mark Line's assets. At this stage of the litigation, those allegations suffice.

The Court also rejects Moving Defendants' argument that Plaintiff inadequately alleged insolvency to support its Section 273 claim. (*See* Def. Br. 20-21). Plaintiff is not required to allege with specificity that Mark Line became insolvent as a result of the alleged transfer of assets. *See Friedman*, 848 F. Supp. 2d at 292. Plaintiff need not conduct an insolvency analysis or otherwise engage in an in-depth examination of Mark Line's finances. *See id.* And the Court does not consider Plaintiff's insolvency allegation in a vacuum, but rather considers it alongside Plaintiff's allegations regarding Defendants' fraudulent scheme, which allegedly left Mark Line "judgment-proof[.]" (FAC ¶ 26). The same analysis applies to Plaintiff's allegation, in support of its Section 274 claim, that the alleged transfer "left [Mark Line] with no capital with which to pay its creditors," and the allegation, in support of its Section 275 claim, that the conveyance "was made with the intent and ... the knowledge that [it] would render Mar[k L]ine unable to pay its debts as they became due." (*Id.* at ¶¶ 109, 112).

Considered together with the other pleadings, these allegations are sufficient to state claims for relief under DCL §§ 273, 274, and 275. The Court therefore rejects Moving Defendants' motion to dismiss these claims.

### 6. Plaintiff Fails to State a Claim Under N.Y. General Business Law Article 35-E

Finally, the Court addresses Moving Defendants' argument that the agreements at issue are not "construction contracts" for purposes of GBL Article 35-E, and that Plaintiff's claim thereunder must therefore be dismissed. (Def. Br. 19).[9] In particular, Moving Defendants note that the statute applies only "where the aggregate cost of the construction project including all labor, services, materials[,] and equipment to be furnished, equals or exceeds one hundred fifty thousand dollars." (*Id.* (quoting GBL § 756)). Moving Defendants assert that, because Plaintiff seeks to recover just $119,654 under the relevant agreements, its Article 35-E fails as a matter of law. (*Id.*).

The Court agrees with Moving Defendants. Plaintiff does not claim that the value of the agreements at issue here exceeded $150,000. (*See generally* FAC). And Plaintiff has not advanced any allegations at all regarding the aggregate value of the construction projects at any of the four properties in New York and New Jersey. (*Id.*). The only pleading as to the cost of any work performed on the projects at issue is $119,654, which is below the minimum threshold under GBL § 756. Accordingly, the agreements are not "construction

---

[9] Moving Defendants also renew their earlier argument that Plaintiff has failed adequately to allege the existence of any contract at all, let alone one that qualifies as a "construction contract." (*See* Def. Br. 19). The Court has already rejected Moving Defendants' argument regarding the insufficiency of Plaintiff's breach of contract claim. The Court will not repeat its discussion here, and instead focuses exclusively on Moving Defendants' claim that the contract at issue was not a "construction contract" under Article 35-E.

contracts" for purposes of the statute, and Plaintiff's Article 35-E claim therefore fails.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to dismiss is GRANTED IN PART and DENIED IN PART. In particular, Plaintiff's claims for breach of contract, alter ego liability, promissory estoppel, breach of fiduciary duty, conversion, and violations of DCL §§ 273, 274, and 275 survive.

Moving Defendants are ORDERED to file an answer or otherwise respond to the Amended Complaint within 21 days of the date of this Order. Within 14 days thereafter, the parties shall submit a joint status letter and a proposed Civil Case Management Plan, as outlined in the Notice of Initial Pretrial Conference in this matter. (Dkt. #5). The parties are forewarned that, once the Court approves any proposed discovery deadlines, it will thereafter be disinclined to extend those deadlines.

Plaintiff is further ORDERED to advise the Court, within 21 days of the date of this Order, as to how it intends to proceed against Defendant Mosaic Capital Group LLC.

The Clerk of Court is directed to terminate Docket Entry 21.

SO ORDERED.

Dated:     August 9, 2018
            New York, New York

                                   _____
                                     KATHERINE POLK FAILLA
                                United States District Judge